IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| Mondrea Vinning-El, #B63459, ) | |
| ) | |
| Plaintiff, ) | Case No. 05-cv-570-DRH |
| ) | |
| vs. ) | Hon. David R. Herndon |
| ) | |
| John D. Evans, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO CONTINUE TRIAL AND REOPEN DISCOVERY**

**I.     INTRODUCTION**

Continuance of the trial and re-opening discovery are necessary to afford Plaintiff Mondrea Vinning-El the opportunity to fully and fairly litigate his claims.  Mr. Vinning-El has been a prisoner acting *pro se* since the inception of this lawsuit in 2005 until only a few weeks ago when he retained the undersigned *pro bono* counsel to represent him.  Despite his diligent efforts in prosecuting his claims, he is not a licensed attorney and has no formal training or education in law.  It is not surprising, therefore, that discovery in this case is wholly inadequate to allow him the full and fair opportunity to prosecute his claims.  These inadequacies will severely hamper his ability to prove the improper denial of his freedom to follow his sincerely held religious belief that he should adhere to a vegan diet commensurate with his faith.  The ability to prove his injuries and recover appropriate damages will also be severely hampered if trial is not continued and discovery not re-opened.  Furthermore, given trial is set to begin on July 2, 2012, while Mr. Vinning-El's counsel only made an appearance on May 22, 2012, an extension of time would afford a more appropriate time frame to prepare for trial.  For this and

the other reasons stated below, Mr. Vinning-El respectfully requests this Court to continue the trial and re-open discovery for 120 days.

## II.     BACKGROUND

Mr. Vinning-El began his current prison term at the Centralia Illinois Department of Corrections ("IDOC") facility in 1999.  Since then, Mr. Vinning-El has been transferred several times throughout the IDOC system but has remained steadfast in his odyssey to receive a vegan religious diet.  This includes making many religious requests for a vegan diet and going on hunger strikes.

Defendant Sutton's failure to provide him with a vegan diet led to this lawsuit. Throughout his *pro se* representation, Mr. Vinning-El has been dogged in his efforts to prosecute his claims.  This includes amending his complaint, serving interrogatories, requests for admission, and document requests on the original defendants, filing three motions to compel discovery, moving for summary judgment, and opposing defendants' motion for summary judgment.  Yet the discovery received by Mr. Vinning-El to date has been paltry. For example, he has been unable to depose any witnesses or retain a medical expert to opine on his damages.

On February 2, 2012, this Court ruled that Defendant Sutton was not protected by qualified immunity, finding that he based his decision to deny Mr. Vinning-El a vegan diet on the improper ground of his understanding of the tenets of the Moorish Science Temple religion rather than on Mr. Vinning-El's personal religious beliefs.  (2/2/2012 Tr. at 79-80, Ex. B)  Mr. Vinning-El claims that the unlawful denial by Defendant Sutton of his sincere religious request for a vegan diet caused him significant physical harm as well as mental and emotional anguish. However, the final pretrial order ("Final PTO") issued on March 23, 2012, due to the lack of discovery about Mr. Vinning-El's damages, sets the damages issue to be tried as whether Mr. Vinning-El "has suffered a compensable injury in the absence of physical injury."  (3/23/2012

2

Final Pretrial Order, ECF No. 118.) This limitation not only precludes punitive damages but also limits compensatory damages to $1 under the provision of the Prison Litigation Reform Act ("PLRA") found at 42 USC § 1997e(e).[1] *See Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008).

Counsel has proceeded diligently since being retained by Mr. Vinning-El. Among other things, counsel has requested from Defendant Sutton's attorney, and reviewed, all discovery previously produced to Mr. Vinning-El, interviewed Mr. Vinning-El in person at the Hill IDOC facility, researched the law applicable to this case, and held a telephonic conference on June 6, 2012 with Defendant Sutton's attorney to discuss whether he would agree to this motion, to supplement discovery, and to provide all documents in his possession not previously produced. (*See* 6/7/2012 Ltr. from V. Didwania to J. Rupcich, Ex. A) But counsel needs more time and additional discovery to fully and fairly litigate Mr. Vinning-El's claims.

### III.   ARGUMENT

#### A.   Legal Standards

This Court has broad discretion to continue trial and reopen discovery as part of its power to control its docket and promote fair outcomes in a case. *Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d 1213, 1222 (7th Cir. 1990) (citations omitted) ("The decision to grant or deny a motion for continuance falls within the sound discretion of the trial court."); *Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 490 (7th Cir. 2007) (citations omitted) (denial of motion to reopen discovery reviewed for abuse of discretion). In determining whether to exercise this discretion, courts look to, among other things, the amount of time available for

---

[1] "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 USC § 1997e(e).

3

preparation, the likelihood of prejudice from the denial of a continuance, and the likelihood that a continuance will satisfy the movant's needs. *See, e.g.*, *United States v. Jones*, 455 F.3d 800, 805 (7th Cir. 2006); *see also Childers v. Slater*, 197 F.R.D. 185, 188-90 (D.D.C. 2000) (reopening discovery when motion was filed twenty-eight months after the close of discovery and sixteen months after the ruling on defendant's motion for summary judgment based on the "overarching principle" that "*pro se* litigants generally are entitled to wider latitude than those represented by counsel").

      **B.**    **A Continuance and Reopening of Discovery Is Warranted Here to Allow Plaintiff to Fully and Fairly Litigate His Claims.**

Mr. Vinning-El has been dogged in pursuing discovery and in prosecuting his claim. This includes propounding upon each Defendant 15 interrogatories and 12 requests for admission, serving requests for documents, and filing three motions to compel, some of which were successful. Such diligence favors granting this motion. *See Childers*, 197 F.R.D. at 189 (*pro se* plaintiff was reasonably diligent in obtaining discovery when she did not request post-deadline discovery only after procrastinating in serving discovery, but instead served interrogatories and document requests; such diligence weighed in favor of reopening discovery).

      1.    Substantial Relevant Discovery Has Not Taken Place.

Ultimately Mr. Vinning-El is not an attorney, and faces even greater challenges than other *pro se* plaintiffs by being incarcerated. *See Childers*, 197 F.R.D. at 189 (plaintiff's diligence in obtaining discovery must be evaluated in light of the fact she was *pro se* and faced financial difficulties); *Cerniglia v. County of Sacramento*, No. 99-cv-01938, 2007 WL 2456073, at *1 (E.D. Cal. Aug, 24 2007) (reopening discovery and recognizing that a basis for doing so is that "*pro se* prisoners are severely hampered in their ability to take deposition testimony"). It is no surprise, therefore, that he has not obtained through discovery a substantial amount of

4

evidence relevant to his claims. The following are prominent examples of the lacunae in Mr. Vinning-El's discovery on the liability of Defendant Sutton. Furthermore, counsel for Defendant Sutton has refused to supplement any discovery responses or productions at this time. (Ex. A)

        a.     Depositions

Due to his incarceration, Mr. Vinning-El has been unable to depose a single person including Defendant Sutton, Defendant Evans, or any of Defendant Sutton's fact witnesses that will be called at trial. Furthermore, Mr. Vinning-El should be able to depose witnesses with knowledge about his expressed religious beliefs. These witnesses include one or more prison officials at the prison facilities where Mr. Vinning-El has been incarcerated for the past decade, such as chaplains, grievance officers, and others involved in implementing religious requests for special diets. Other witnesses who may have relevant information include other inmates at these facilities who spoke with Mr. Vinning-El about his religious beliefs, attended religious services with him, or observed him adhering to these beliefs. Many of these persons should be able to speak directly to the sincerity of Mr. Vinning-El's expressed religious conviction to follow a vegan diet. Mr. Vinning-El should also be allowed to retain an expert on the Moorish Science Temple or Hebrew Israelite (or African/Black Hebrew Israelite) religions to explain the congruence of these faiths. These are the religions to which he has declared an affiliation during the relevant time of his incarceration.

        b.     Document Productions

The documents produced during discovery are also severely inadequate. These documents do provide a good indication that Mr. Vinning-El repeatedly requested a vegan diet at several different facilities, including Pinckneyville, and filed grievances to overturn denials of these requests. They help to demonstrate the sincerity of his belief that veganism was for him a religious requirement and a dictate of religious conscience. But they are also vastly incomplete.

For example, the following are documents Mr. Vinning-El does not have that would help prove he had a sincere religious commitment to veganism:

- All of his multiple requests for a vegan diet at the various correctional facilities where he has stayed, including request forms and call passes. Currently only a single request made at Menard on October 13, 2005 is part of the discovery. (*See* Ex. C) The request forms include an explanation in Mr. Vinning-El's own words of the religious basis for his requests. (*Id.*)

- All of his grievance filings that concern denials of his requests for a vegan diet or denials of his other religious requests, except from mid-2004 through mid-2006, which already were produced.

- All of the grants of his requests for, and records regarding the receipt and consumption of, a vegan diet while he was at Menard from 2000-2004, 2005-2006, and 2007-2010; while he was at Western Illinois from 2006-2007; and during his current stint at Hill from 2010 to the present. Currently he only has excerpts of monthly compliance reports at Menard for October 2005-May 2006. (*See* Ex. D)

- Documents showing attendance at religious services at Pinckneyville and the other facilities where he has been housed.

- Memoranda concerning the provision of special trays for religious diets and the compliance in terms of signing for and receiving special trays that is needed to continue to receive a religious diet. For example, receiving less than 75% of religious diet trays was considered a demonstration of a lack of sincerity. (*See* Ex. E)

Documents such as these are relevant to proving that Mr. Vinning-El has a religious commitment to a vegan diet.

### c. Interrogatories

Mr. Vinning-El also has available 11 interrogatories to serve upon Defendant Sutton.[2] Notably, Mr. Vinning-El did not directly ask Defendant Sutton what his assessment was of the sincerity of his claim to needing a vegan diet. Other relevant interrogatories include whether

---

[2] Fifteen total interrogatories were propounded and answered by Defendant Sutton; however, Defendant Sutton's answer to Interrogatory No. 2, served on June 1, 2009, was that this interrogatory was duplicative of Interrogatory No. 9, the response to which was served on June 5, 2008. (*See* Defs.' Resp. to Pl.'s Interrogs., Ex. F; Def. Sutton's Answers to Pl.'s Interrogs., Ex. G)

6

Defendant Sutton varied the basis or process he typically used to determine whether religiously based dietary requests would be granted when different religious affiliations were involved.

          d.      Discovery of the Basis of Defendant Sutton's Decision to Deny Plaintiff's Religious Request

At the hearing on Defendant Sutton's immunity, this Court decided that Defendant Sutton did not base his denial upon the sincerity of Plaintiff's dietary request but on the improper grounds of "the tenets of the Moorish Science Temple faith." (2/2/2012 Tr. at 80, Ex. B) However, Mr. Vinning-El still seeks discovery on this issue. To be awarded punitive damages, Mr. Vinning-El must show that Defendant Sutton's conduct evinced a reckless disregard for his rights. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 756 (7th Cir. 2005). Such discovery would include, for example, information and materials on the basis Defendant Sutton regularly used to make decisions on religious dietary requests, including those made by persons with a declared religious affiliation of Moorish Science Temple. It would also include information on what those decisions were to assess, among other things, any patterns of how these requests were handled for different religions.

      2.      If This Motion Is Denied, The Trial Will Fail to Address Plaintiff's Injuries.

A second independent reason this motion should be granted is that, as currently set, trial in this case will bar Mr. Vinning-El from recovering for the physical, mental, and emotional injuries he claims to have suffered as a result of being denied a vegan diet at Pinckneyville. As described above, the Final PTO effectively limits damages to $1. But Mr. Vinning-El has repeatedly and ardently claimed injuries from Defendant's conduct. The information received and developed to date, though, supporting these injuries does not allow the issue to be fairly presented to the factfinder. For example, counsel likely will retain a medical expert to opine on the general issue of whether someone in Mr. Vinning-El's position of going for long periods

7

without adequate nutrition, including stints of hunger strikes, would in fact suffer such physical and mental ailments and the longer-term and more permanent effects of such illnesses. Through means such as a review of his medical records or a physical examination, this expert could also opine on what medical ailments Mr. Vinning-El suffered in the past or is currently suffering from as a result of the dietary deprivation he alleges occurred at Pinckneyville. There also may be witnesses, such as prison counselors, doctors, nurses, or other staff, who witnessed whatever physical, mental and emotional suffering Mr. Vinning-El experienced at Pinckneyville.

### 3. More Time Will Allow for More Comprehensive Trial Preparation

An additional reason for a continuance stems from the fact that Mr. Vinning-El has only retained counsel to represent him less than eight weeks before trial. Since being retained, counsel has been diligently working to learn the relevant law, facts, discovery, and issues in this case. These efforts include meeting with Mr. Vinning-El and communicating with Defendant's attorney to receive discovery produced in this case and to hold a meet-and-confer to discuss, among other things, what supplemental discovery and documents he is willing to produce at this time.

But *pro bono* counsel would like to devote more time to prepare, so as to best represent Mr. Vinning-El. For example, counsel for Mr. Vinning-El has not even received all documents relevant to this lawsuit that are in the possession of counsel for Defendant Sutton, which Defendant Sutton's attorney has agreed to provide. (*See* Ex. A) Counsel would also like to spend additional time with witnesses, and to see if expert testimony is needed to fairly present the case to the factfinder.

At the same time that continuing the trial will allow counsel to rectify these defects, it will not cause any prejudice to Defendant Sutton. During the June 6, 2012 meet-and-confer, Defendant Sutton's counsel did not provide any reason, such as the possible loss of witnesses he

expects to call, for why postponing trial will harm Defendant Sutton's litigation position. Furthermore, Defendant Sutton is retired, and therefore should have ample availability to attend a re-scheduled trial.

## IV. CONCLUSION

Mr. Vinning-El has done an admirable job representing himself to vindicate his constitutional rights. But he is not a lawyer, cannot take depositions because he is incarcerated, and he has been unable to obtain the discovery necessary to fully represent his interests at trial. For the reasons stated herein, counsel respectfully seeks to continue the trial and reopen discovery to allow Mr. Vinning-El a full and fair opportunity to prosecute his claims.

Dated: June 13, 2012                                   Respectfully submitted,

/s/ Vikas K. Didwania

Vikas K. Didwania (6299645)
Mark Filip (pro hac vice)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
*Attorneys for Plaintiff*
*Mondrea Vinning-El*

K&E 22831776.7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION TO CONTINUE TRIAL AND REOPEN DISCOVERY was filed electronically on this 13th day of June 2012, and will, therefore, be served electronically upon:

Joseph N. Rupcich
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706

/s/ Vikas K. Didwania
Vikas K. Didwania

K&E 22831776.7